1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| EVEREST INDEMNITY INSURANCE COMPANY, a Delaware company, on behalf of itself and as assignee of DERUS WAKEFIELD II, LLC AND STEVEN J. DERUS,<br><br>                  Plaintiff,<br><br>          vs.<br><br>QBE INSURANCE CORPORATION, a foreign insurance company; and, COMMUNITY ASSOCIATION UNDERWRITERS OF AMERICA, INC., a foreign corporation,<br><br>                  Defendants. | NO. 2:13-cv-00828-RSM<br><br><br>ORDER ON PENDING MOTIONS |

## I.  INTRODUCTION

This matter comes before the Court on Defendants' Motion for Protective Order (Dkt. # 15),  Plaintiff's Motion to Compel the Deposition of Joanne Henry (Dkt. # 23), and Defendants' Motion for Partial Summary Judgment (Dkt. # 27). For the reasons set forth below, the Motion for Protective Order shall be denied, the Motion to Compel shall be granted, and the Motion for Partial Summary Judgment shall be denied.

## II.  BACKGROUND

Plaintiff Everest Indemnity Insurance Company ("Everest") filed suit in King County Superior Court against Defendants QBE Insurance Corporation and Community Association Underwriters of America, Inc. (collectively "QBE/CAU"). Defendants removed the action to this Court on May 9, 2013. Dkt. # 1. The case arises from an underlying suit brought by the Hamptons Pointe on Issaquah Ridge Owner's Association ("Association") against Derus Wakefield II, LLC ("Derus") and other Doe defendants for alleged property damage at the Hamptons Pointe Condominium project. Dkt. # 16-1,¶¶ 11-12. Derus tendered the underlying suit to the Association's insurer, QBE/CAU, on July 23, 2009. It requested that QBE/CAU agree to defend and indemnify Derus as a qualified insured under QBE/CAU's insurance policies. *Id.* at ¶ 15. QBE/CAU denied Derus' tender for defense by letter on August 14, 2009. *Id.* at ¶ 16. Everest then agreed to defend Derus under a reservation of rights and brought this complaint against QBE/CAU alleging that QBE/CAU had a duty to defend Derus under Washington law. *Id.* at ¶ 18.

## III. DISCUSSION

Three motions are currently pending: QBE/CAU's motion for a protective order, Everest's motion to compel deposition testimony, and QBE/CAU's motion for partial summary judgment. As an initial matter, the Court notes that QBE/CAU did not comply with LCR 101 when filing its notice of removal. The rule states in pertinent part: "[i]n cases removed from state court, the removing defendant(s) shall file contemporaneously with his or her notice of removal a copy of the *operative* complaint, which must be attached as a separate 'attachment' in the electronic filing system and labeled as the 'complaint' or the

'amended complaint.'" LCR 101(b) (emphasis added). Although QBE/CAU filed Everest's first state court complaint with the notice of removal, it failed to file Everest's amended complaint at that time. Instead, the amended complaint was filed as an exhibit to defense counsel's declaration (Dkt. ## 16, 16-1), almost two months after the case was removed. The amended complaint was first brought to the Court's attention in footnote three found in QBE/CAU's motion for protective order. Dkt. # 15. The footnote citation refers the Court to "Barret Decl., Ex. A." Dkt. # 15, p. 2. The footnote does not indicate that QBE/CAU is referencing the amended complaint, which is the *operative* complaint in this case that should have been filed contemporaneous with notice of removal.

The Court turns first to the motion for partial summary judgment, and then to the parties' discovery motions.

### A.  Motion for Partial Summary Judgment

Summary judgment is proper if the moving party establishes that there are no genuine issues of material fact and it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are those which might affect the outcome of the suit under governing law.  *Anderson*, 477 U.S. at 248.  The moving party initially bears the burden of proving the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets that burden, the burden shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues of material fact.  *Id.* at 324.  In determining this, the Court must draw all reasonable inferences in favor of the non-moving party.  *Anderson*, 477 U.S. at 255.

1   QBE/CAU's motion for partial summary judgment requests dismissal on statute of

2   limitations grounds of Everest's claims for common law bad faith, negligence, and Insurance

3   Fair Conduct Act ("IFCA") violations.

4       1.   <u>Insurance Bad Faith</u>

5       The parties agree that in Washington, an action for bad faith handling of an insurance

6   claim is a tort. *Moratti ex rel. Tarutis v. Farmers Ins. Co. of Washington*, 254 P.3d 939, 942

7   (Wash. 2011) *review denied*, 173 Wash. 2d 1022, 272 P.3d 850 (2012) and *cert. denied*, 133

8   S. Ct. 198, 184 L. Ed. 2d 235 (U.S. 2012). They also agree that a three-year statute of

9   limitations applies to tort claims. The contested issue is whether the statute of limitations

10  began to run on (1) August 14, 2009, the date that QBE/CAU denied Derus' coverage

11  request; or (2) the date the judgment in the underlying suit became final, which was when the

12  Association finalized the settlement agreement on April 16, 2010 (*see* Dkt. # 27, p. 6).

13      There is no Washington Supreme Court decision addressing when a bad faith tort

14  claim accrues in a duty to defend action. Where "the state supreme court has not spoken on

15  an issue, [the Court] must determine what result the [state supreme court] would reach based

16  on state appellate court opinions, statutes and treatises." *Evanston Ins. Co. v. OEA, Inc.,* 566

17  F.3d 915, 921 (9th Cir. 2009). In *Moratti*, Division 1 of the Washington State Court of

18  Appeals held that it was error for the trial court to dismiss a third party bad faith claim

19  against an insurer on grounds that the claim was barred by the statute of limitations. *Id.*  In so

20  holding, the court reiterated that "[a] cause of action generally accrues for the purposes of

21  commencement of the statute of limitation when a party has a right to apply to the court for

22  relief." *Id.* (quoting *Bush v. Safeco Ins. Co.*, 596 P.2d 1357, 1358 (Wash. Ct. App. 1979)). It

23

24

25

then stated that "[t]he action 'accrues for purposes of a statute of limitation when the final judgment is entered.'" *Moratti*, 254 P.3d at 942 (quoting *Bush*, 596 P.2d at 1358). Thus, in third-party actions alleging bad faith against an insurer, the action accrues on the date that a final judgment in the underlying suit is entered. Despite the clear language of *Moratti*, QBE/CAU argues that actions for bad faith that allege tort claims, as opposed to actions for breach of contract claims, accrue on the date that the insurer denies an insured's request for coverage. QBE/CAU contends the line of cases cited by *Moratti* apply only to actions for breach of contract. Although it concedes that in Washington the duty to defend is considered a continuing duty, it appears to argue that the tort of bad faith does not relate to an insurer's contractual duty to defend. *See* Dkt. # 37, p. 3 ("Plaintiff's argument conflates a contractual duty to defend . . . with the tort of bad faith").

The *Moratti* court specifically rejected the insurer's argument that a cause of action for mishandling of an insurance claim is distinct from an insurer's duty to defend or indemnify an insured. *Moratti*, 254 P.3d at 943. The court also noted that an insurer's duties to settle, defend, and indemnify are continuing duties. *Id.* QBE/CAU has failed to address the relationship between the duties that underpin each cause of action. A bad faith claim against an insurer stems from an insurer's duty to act in good faith. *Tank v. State Farm Fire & Cas. Co.*, 715 P.2d 1133, 1136 (Wash. 1986) (en banc). The source of the duty is the fiduciary relationship that exists as result of both the contract between the insured and insurer, as well as the "high stakes involved for both parties . . . and the elevated level of trust underlying insureds' dependence on their insurers." *Id.* In a third-party bad faith action for failure to defend, the duty to act in good faith is inextricably linked to the duty to defend, which, under

ORDER ON PENDING MOTIONS - 5

Washington law, remains a continuing duty until the underlying suit has been resolved. As held by the court in *Moratti*, a cause of action for third-party bad faith accrues on the date that judgment is entered in the underlying suit. Here, judgment became final on April 16, 2010. Everest brought its claim for common law bad faith on April 11, 2013, within the three-year statute of limitations.

  2. Negligence and IFCA Violations

  QBE/CAU also contends that Everest's negligence and IFCA claims are time-barred under the three-year statute of limitations. Similar to Everest's common law bad faith claim, however, the duties that form the basis for these claims are intimately related to QBE/CAU's duty to defend the underlying suit. QBE/CAU has not directed the Court to authority that would permit it to find that the negligence and IFCA claims accrued before QBE/CAU's duty to defend was extinguished. Accordingly, QBE/CAU's motion for partial summary judgment on statute of limitations grounds shall be denied.

**B. Discovery Motions Regarding Joanne Henry's Deposition Testimony**

  QBE/CAU's motion for a protective order and Everest's motion to compel deposition testimony concern Everest's subpoena of attorney Joanne Henry. Ms. Henry was QBE/CAU's coverage attorney. Everest subpoenaed Ms. Henry to appear at a deposition scheduled for August 7, 2013, which she did not attend. Dkt. # 23, p. 2. QBE/CAU contends that Ms. Henry's testimony is protected by attorney-client privilege and as attorney work product.

  Federal Rule of Civil Procedure 26(c) provides the mechanism for a party to move for a protective order to limit the scope of discovery sought by the opposing party. "The court

may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). QBE/CAU seeks a protective order directing (1) that Ms. Henry need not appear for a deposition until the Court addresses the motion for partial summary judgment; and (2) that scope of the deposition be limited such that Everest's counsel is precluded from asking questions that invade attorney-client privilege and work product, and questions concerning any other claims or topics not specific to this litigation. Dkt. # 15, p. 2. QBE/CAU's first request is now moot as the Court has ruled on its motion for partial summary judgment. QBE/CAU's second request is addressed below.

The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting objections.  *See Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, No. 10-0148, 2011 WL 2518948, at * 2 (E.D. Cal. June 23, 2011).  Here, QBE/CAU contends that at least some of the testimony Everest seeks to elicit from Ms. Henry is privileged because Ms. Henry acted solely as legal counsel when she provided a legal opinion to QBE/CAU. QBE/CAU states that Everest seeks to question Ms. Henry about communications with her client and on the following subjects:

> Experience doing coverage work
> Other coverage clients
> Has she ever accepted a tender by a developer in a condo cd case for any carrier
> How did she come to be retained by CAU
> Had she done any coverage work before that
> What investigation did she do upon receiving the Hamptons Pointe tender
> Did she rely on anything outside the four corners of the complaint and the four corners of the policy in denying the tender
> Did she rely on assumptions in denying the tender

ORDER ON PENDING MOTIONS - 7

1    What in the QBE policy supports your position

2  Dkt. # 16, p. 2 (Barret Decl. ¶ 6). QBE/CAU contends that the above subject matter is (1) not

3  relevant to the question of what QBE/CAU "knew or didn't know," and (2) the information

4  sought by Everest is privileged. Dkt. # 15, p. 10.[1]

5    Everest contends that deposing Ms. Henry is relevant to the question of whether

6  QBE/CAU acted reasonably in denying Derus' tender if QBE/CAU in fact relied entirely

7  upon Ms. Henry's investigation and opinion to deny coverage. QBE/CAU stakes its primary

8  relevance objection on the basis that the bad faith claims are time-barred. Because the Court

9  rejected that argument, the relevance objection is largely moot. To the extent QBE/CAU

10  believes that the proposed deposition subject matter is not relevant to Everest's bad faith

11  claims (*see* Dkt. # 25, n.18), the Court disagrees.

12    "The Federal Rules of Civil Procedure allow for broad discovery in civil actions."

13  *Wilkerson v. Vollans Auto., Inc.*, No. 08-1501, 2009 WL 1373678, at *1 (W.D. Wash. May

14  15, 2009).  "Parties may obtain discovery regarding any non-privileged matter that is relevant

15  to any party's claim or defense. . ." Fed. R. Civ. P. 26(b)(1).  Relevant information for

16  purposes of discovery is information "reasonably calculated to lead to the discovery of

17  admissible evidence."  *Surfvivor Media Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir.

18  2005).  District courts have broad discretion in determining relevance for discovery purposes.

19  *Id.* (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Everest contends that

20  QBE/CAU relied exclusively on Ms. Henry's opinion to deny Derus' tender. Probing Ms.

---

[1] QBE/CAU also asserts work product protection, but the briefing is unclear as to which of Ms. Henry's documents, if any, it seeks to protect.

Henry's background and coverage experience is relevant and reasonably calculated to glean

information about whether QBE/CAU acted reasonably when it purportedly adopted Ms.

Henry's coverage analysis wholesale.

Although the information sought by Everest through discovery is relevant, the issue

of whether QBE/CAU may assert attorney-client privilege to limit Ms. Henry's deposition

testimony remains less clear. In diversity actions, questions of privilege are controlled by

state law. *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989). In Washington,

the party asserting attorney-client privilege bears the burden of proving all elements of

privilege. *Dietz v. Doe*, 935 P.2d 611, 618-19 (Wash. 1997). A "salient element" of the

privilege inquiry is whether the privilege was waived. *Id.* at 618.  Everest contends that

QBE/CAU waived attorney-client privilege when it delegated its quasi-fiduciary obligation

to investigate, analyze, and respond to Derus' tender to Ms. Henry. Everest contends the

Washington Supreme Court's decision in *Cedell v. Farmers Ins. Co. of Washington*, 295 P.3d

239 (Wash. 2011) is controlling authority on this issue.

In *Cedell*, the Washington Supreme Court addressed the scope of attorney-client

privilege and work product for an insurer defending against a bad faith claim brought by its

insured. There, the Court held that under certain circumstances, an insurer waives its right to

redact parts of its claims file.  *See id.* at 246. Specifically, the Court determined that when an

insured brings a first-party bad faith claim against its insurer, attorney-client privilege and

work product protection are presumptively not relevant to claims adjustment

communications. *Id. Cedell* outlined a process by which the insurer may overcome this

presumption: first, the insurer must show that "its attorney was not engaged in the quasi-

fiduciary tasks of investigating and evaluating or processing the claim[,]"; then, "[u]pon such a showing, the insurance company is entitled to an in camera review of the claims file, and to the redaction of communications from counsel that reflected the mental impressions of the attorney[,]"; finally, should the trial court find privilege protection warranted, it must then address whether the insured has any claims that would "pierce the attorney-client privilege." *Id.*

Several district courts in this circuit have interpreted *Cedell* as broadening the scope of discoverable information in insurance disputes. *See, e.g.*, *Stewart Title Guar. Co. v. Credit Suisse, Cayman Islands Branch*, Case No. C11-227-BLW, 2013 WL 1385264, at * 4 (D. Idaho April 3, 2013) ("as *Cedell* makes clear, not all coverage communications are protected"); *see also Philadelphia Indem. Ins. Co. v. Olympia Learning Center*, Case No. C12-5759-RBL, 2013 WL 3338503, at * 4 (W.D. Wash. July 2, 2013) ("If nothing else, it is now clear that the scope of discovery in first-party bad faith actions is very broad, and the attorney-client privilege and work product doctrine are less difficult to overcome now than they were prior to the opinion"). In addition, this Court has found *Cedell* applicable to third-party bad faith actions. *Carolina Cas. Ins. Co. v. Omeros Corp.*, Case No. C12-287-RAJ, 2013 WL 1561963, at * 3 (W.D. Wash. Apr. 12, 2013) (finding *Cedell* applicable to third-party insurance actions because "[t]he Cedell court grounded its ruling in the quasi-fiduciary duty of an insurer to its insured, along with the public policy interest in regulating the business of insurance").

*Cedell* distinguishes between attorney communications made while acting in a quasi-fiduciary capacity from those made by an attorney solely providing an opinion to the insurer

with respect to whether it may be liable under the terms of the policy. Ultimately, an insurer may overcome the presumption that the privilege is inapplicable if it can show that its attorney was not involved in "investigating, and evaluating, or processing the claims." *Cedell*, 295 P.3d at 246. This may be accomplished by providing evidence that the attorney was instead "providing the insurer with counsel as to its own liability . . . ." *Id.* However, "[t]he *Cedell* Court was not content to allow the insurer to merely assert claims of privilege . . . ." *Carolina Cas. Ins. Co.*, 2013 WL 1561963 at * 2.

Here, the Court has only the assertions of QBE/CAU that Ms. Henry's role was limited to reading the policy and providing an opinion to QBE/CAU. Moreover, even if Ms. Henry acted solely to provide a legal opinion to QBE/CAU on liability, Everest's allegation that QBE/CAU failed to do any investigation on its own is troubling. Insurers have a duty to defend an insured's underlying suit unless the claims alleged in the underlying complaint are "clearly not covered by the policy." *Truck Ins. Exch. v. Vanport Homes, Inc.*, 58 P.3d 276, 282 (Wash. 2002). "An insurer acts in bad faith if its breach of the duty to defend was unreasonable, frivolous, or unfounded." *American Best Food, Inc. v. Alea London Ltd.*, 229 P.3d 693, 700 (Wash. 2010). Everest argues that Ms. Henry is the only person able to testify on how Derus' claim was handled. It believes that only Ms. Henry has knowledge about the "construction of the allegations in the complaint, the existence and resolution of any factual or legal ambiguities, investigation beyond the four corners of the complaint, and application of policy limitations and exclusions in relation to the 'clearly not covered standard.'" Dkt. # 31, p. 4. Should Everest's assumptions prove true, QBE/CAU's delegation of all investigative and claims handling responsibilities to Ms. Henry would have the effect of

shielding relevant bad faith evidence from discovery since no other QBE/CAU employee would have knowledge about QBE/CAU's basis for the denial of Derus' tender.

In any event, QBE/CAU's motion for a protective order is premature. Even if QBE/CAU could overcome the presumption that the privilege is inapplicable by showing that Ms. Henry was not acting in a quasi-fiduciary capacity, *Cedell's* prescribed *in camera* methodology assumes that there is documentary evidence for the trial court to review. Here, no such record is before the Court.

Ms. Henry's testimony is relevant to determining whether QBE/CAU acted reasonably in denying Derus' tender, and Everest is entitled to take her deposition. Should Everest pose a question to Ms. Henry that QBE/CAU believes, in good faith, seeks to elicit privileged information, it may make the proper objection. In the event that Everest believes, in good faith, that the objection is without merit, the parties may then bring that issue before the Court. Accordingly, QBE/CAU's motion for a protective order shall be denied, and Everest's motion to compel shall be granted.

In granting a motion to compel, the Court "must . . . require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5). Because the Court cannot say that QBE/CAU's position—that Ms. Henry's testimony was privileged such that she did not need to appear for the scheduled deposition—was substantially justified, QBE/CAU and its attorney shall pay Everest's reasonable expenses incurred in defending the motion for a protective order and in bringing the motion to compel. The Court declines to address Everest's additional request for further

1    sanctions against QBE/CAU and Ms. Henry as an award of reasonable expenses should be

2    sufficient to deter any future discovery abuse.

3                                    **IV. CONCLUSION**

4           Having considered the motions, the responses and replies thereto, the attached

5    declarations and exhibits, and the remainder of the record, the Court hereby finds and

6    ORDERS:

7

8           (1)     Defendants' Motion for Protective Order (Dkt. # 15) shall be DENIED;

9           (2)     Plaintiff's Motion to Compel (Dkt. # 23) shall be GRANTED;

10          (3)     Defendants' Motion for Partial Summary Judgment (Dkt. # 27) shall be

11   DENIED;

12          (4)     Attorney Joanne Henry is ORDERED to attend a deposition on a date

13   mutually available and convenient to her and the parties, within three (3) weeks of the

14   date this Order;

15          (5)      Defendants CAU/QBE shall pay Plaintiff's reasonable expenses, including

16   reasonable attorney's fees in opposing Defendants' related Motion for Protective

17   Order and for bringing the Motion to Compel. Plaintiff shall file a motion for

18   compensable fees and costs within three (3) weeks of this order, to be noted in

19   accordance with Local Civil Rule 7.

20

21          DATED this 30th day of October 2013.

22

23

24                                    _____
                                      RICARDO S. MARTINEZ
25                                    UNITED STATES DISTRICT JUDGE